# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

SHAWN WILLIAM SHARPE,  )
  )
                Plaintiff,  )    No. 5:18-cv-00749-DCN
  )
      vs.  )    **ORDER**
  )
DENNIS BUSH, ALVIN GRABBER,  )
LISA YOUNG, and FULLER,  )
  )
                Defendants.  )
_____)

      This matter is before the court on United States Magistrate Judge Kaymani D. West's report and recommendation ("R&R") recommending that the court grant defendants Dennis Bush, Alvin Graber,[1] Lisa Young, and Fuller's (collectively, "defendants") motion for summary judgment, ECF No. 97. For the reasons set forth below, the court adopts the R&R and grants defendants' motion.

## I. BACKGROUND

      Plaintiff Shawn William Sharpe ("Sharpe") is a prisoner in the South Carolina Department of Corrections ("SCDC") prison system. Sharpe alleges that his property was lost when he was moved from the Moultrie Unit to "SMU lock up" at Broad River Correctional Institution ("BRCI"). ECF No. 30 at 5. Included in that property was legal paperwork that Sharpe planned to use to file an application for post-conviction relief ("PCR"). Sharpe contends that because his paperwork was lost, he was unable to file his PCR application in time, and as a result, his PCR claim was dismissed as untimely. See ECF No. 86-6 at 3–5 (state court order finding Sharpe's PCR application to be untimely

---

[1] Graber's name is misspelled in the complaint.

1

and equitable tolling to be inapplicable). Sharpe alleges that each defendant was personally involved in the loss of his possessions. According to Sharpe, defendant Fuller and defendant Alvin Graber ("Graber") were to pack up Sharpe's possessions. Then Fuller was to give the possessions to Graber, who was to give the possessions to defendant Lisa Young ("Young"), who worked in SMU lock up's property room. Defendant Dennis Bush ("Bush") was the Warden at BRCI at the time, and Sharpe contends that Bush's involvement included responding to Sharpe's grievances and verbally assuring Sharpe that Sharpe would receive trial transcripts from his trial.

Sharpe filed several grievances based on the loss of his property. The SCDC procedure for filing a grievance is as follows. An inmate must first "make an effort to informally resolve a grievance by submitting a Request to a Staff Member form" within eight working days of the incident. ECF No. 86-4 at 13. If the issue cannot be informally resolved, then the inmate must complete a "Form 10-5, Step 1" ("Step 1 form") and place it in the designated grievance box. The Warden responds to the grievance in writing, and the inmate will then sign and date the response to acknowledge receipt. If the inmate disagrees with the Warden's decision, the inmate can appeal the decision by completing a "Form 10-5a, Step 2" ("Step 2 form") and placing it in the designated grievance box. The "responsible official" eventually renders a decision on the appeal, marking SCDC's final response on the matter.

Sharpe filed three different Step 1 forms related to the loss of his property. His first Step 1 form was received on October 14, 2016. ECF No 93-1 at 2. In response, the Warden issued a decision that recommended various items be reissued to Sharpe through the commissary. ECF No. 93-1 at 3. The Warden noted that "[p]ersonal items such as

pictures and mail cannot be replaced or compensated." Id. The Warden concluded by stating that "[b]ased on this information, your action requested has been resolved. If not satisfied with my response, see Step 5 below." Id. "Step 5" contains instructions on how to appeal the Warden's decision, which includes completing a "Step 2 appeal form" and placing it in the grievance box. Id. After the Warden's decision, the document contains two options with empty check boxes next to them. The first says "I accept the Warden's decision and consider the matter closed." Id. The second says "I do not accept the Warden's decision and wish to appeal." Id. Sharpe placed a check next to and circled the option that states "I accept the Warden's decision and consider the matter closed." He then signed the form.

Sharpe filed another Step 1 form that was received on October 13, 2017. Id. at 8. In that grievance, Sharpe explains that he was transferred from one prison to another and that he never received his property after the transfer. In relation to his legal documents, Sharpe explains that his legal work was included in the property and that he needed it as soon as possible because he was in the middle of his PCR. The grievance was returned to Sharpe because Sharpe "failed to attach the required RTSM/KIOSK number regarding [his] attempt at an informal resolution on this issue as required in GA-01.12 Inmate Grievance Procedures." Id. at 9. Sharpe was told that he could refile a new grievance after receiving a response to his informal resolution attempt and that failure to refile would result in an abandonment of the grievance. According to SCDC records, Sharpe did not take any further action with respect to this grievance. ECF No. 86-4 at 4.

Sharpe filed a third Step 1 form, which was received on July 20, 2018. ECF No. Id. at 29. The form was again returned to Sharpe because he "failed to attempt an

3

informal resolution in accordance with Agency Policy GA-01.12." Id. The form further stated that "[y]ou may re-file a new grievance form within eight (8) working days of receiving a response to the Request to Staff Form or ARTSM." Id. According to SCDC records, Sharpe did not take any further action with respect to this grievance. Id. at 5.

In his second amended complaint, the now operative complaint, Sharpe brought claims under 42 U.S.C. § 1983 based on a violation of Sharpe's First Amendment right to access to courts and on a violation of Sharpe's Fourth Amendment right to "feel secure in life liberty and property." ECF No. 30 at 4.[2] The magistrate judge then recommended that Sharpe's Fourth Amendment/due process claim be dismissed but that his First Amendment access-to-courts claim survive. ECF No. 43. No objections to that R&R were filed, so the court dismissed Sharpe's Fourth Amendment/due process claim. ECF No. 49. As such, Sharpe's remaining claim is his First Amendment access-to-courts claim. Defendants filed a motion for summary judgment on March 4, 2019. ECF No. 86-1. Sharpe responded on March 27, 2019, ECF No. 93, and defendants replied on April 3, 2019, ECF No. 96. The magistrate judge issued an R&R on August 19, 2019 that recommended that the court grant defendants' motion for summary judgment. ECF No. 97. Sharpe filed objections to the R&R on September 6, 2019. ECF No. 99. Defendants did not reply to Sharpe's objections.

---

[2] The court notes that the R&R also considered Sharpe's Eighth Amendment claim and due process claim. The Eight Amendment claim was raised in Sharpe's first amended complaint but not in his second amended complaint, the now operative complaint. The due process claim was dismissed by the court. ECF No. 49. As such, the court does not address either of these claims in this order.

## II. STANDARD

### A. Pro Se Standard

Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390-91 (4th Cir. 1990).

### B. R&R Review

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). In other words, de novo review is unnecessary when a party makes general and

conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### C. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

Construing Sharpe's objections liberally, as the court is required to do, Sharpe raises two objections to the R&R. First, Sharpe objects to the R&R's finding that there is no genuine issue of material fact concerning defendants' personal involvement in the loss

6

of Sharpe's possessions. Second, Sharpe objects to the R&R's finding that Sharpe has failed to show that his underlying PCR claim is "arguable" and "nonfrivolous." Despite Sharpe's objections, the court agrees that summary judgment is warranted in favor of defendants.

### A. Defendants' Involvement

The R&R found that Sharpe presented no evidence of any defendant engaging in specific conduct that lead to a specific injury. In his objections, Sharpe states that "it is facts [sic] that [his] property was lost due to the defendants not doing their job properly." ECF No. 99 at 1. To provide greater context for Bush's involvement, Sharpe explains that in response to his first grievance, Bush admitted that Sharpe's property was lost and that several of Sharpe's items would be replaced. Sharpe notes that Bush's decision "states that certain items would be replaced, however, legal documents and photos would not be replaced. Both [Sharpe] and Warden Bush agreed on those stipulations, however, its [sic] now three years later and [Sharpe] has yet to receive the items agreed upon." Id. Sharpe goes on to explain that Bush told Sharpe in person that Bush would have the associate warden obtain copies of trial transcripts from Sharpe's trial but that Sharpe never received them. Sharpe does not mention the other defendants in his objections, but in his response to defendants' motion for summary judgment, he argues that Fuller and Graber were responsible for ensuring that Sharpe's possessions were packed and transported, and that Young should have checked to ensure that Sharpe received his possessions.

A civil action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte

7

Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In Bounds v. Smith, the Supreme Court recognized that "prisoners have a constitutional right of access to the courts." 430 U.S. 817, 821 (1977). Right-to-access claims include claims in which a prisoner has alleged that an official act that denied access to the courts caused the loss of a meritorious case. Christopher v. Harbury, 536 U.S. 403, 414 (2002). "The right of access to the courts includes 'the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein.'" Pronin v. Johnson, 628 F. App'x 160, 162 (4th Cir. 2015) (quoting Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011)). As such, a prisoner may pursue a § 1983 claim when his right to access the courts has been violated because prison officials have prevented him from preparing and filing court documents that affect his personal liberty.

However, negligent conduct that results in the denial of access to courts cannot serve as the basis of a § 1983 action. Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). For example, in Pink, the Fourth Circuit held that prison officials' negligent processing of an inmate's request form for a money order for his docketing fee was not actionable under § 1983. Id. at 74–75. The inmate gave the completed request form to a prison guard, who gave it to the proper prison officials. Id. at 74. The form was signed and approved by the assistant warden and should have been delivered to the Accounting Department,

but for reasons unknown, Accounting did not receive the form. As a result, the money order was never issued, the court never received the inmate's docketing fee, and the inmate's appeal was dismissed. The inmate brought a § 1983 action against the prison officials for violating his right to access to courts. Relying on Daniels v. Williams, 474 U.S. 327 (1986), the Fourth Circuit explained that "the unintended misrouting of a routine money order request is too far afield from state action used for purposes of oppression" to form a constitutional violation. Id. at 75–76. Indeed, "[t]he inadvertent misrouting of a request form simply does not implicate the fundamental democratic principle of the right to petition; namely, that a republican government not turn a deaf ear to its citizenry." Id. at 76. Therefore, mere negligence cannot sustain a § 1983 action for denial of access to courts.

The R&R recommended that the court grant summary judgment on Sharpe's access-to-courts claim in part because Sharpe failed to provide evidence that any defendant engaged in specific conduct that led to a specific injury. The R&R recounted the affidavits of Bush, Graber, and Young, all of which deny any personal involvement in the packaging or transporting of Sharpe's belongings. Moreover, Graber and Young indicate that it was the responsibility of Moultrie Unit officers to inventory and move Sharpe's possessions, and not their responsibility.[3] ECF Nos. 83-2 at 1; 86-3 at 2. The

---

[3] Fuller was the unit manager of the Moultrie Unit. Service on Fuller has been attempted several times but has been unsuccessful. ECF Nos. 54, 72. As such, Fuller has not made an appearance in this case.

R&R also noted that negligent conduct cannot serve as the basis for § 1983 liability, suggesting that to be the case here.

The court agrees with the R&R's finding that Sharpe failed to present any evidence that any of defendants' involvement in the loss of his legal paperwork[4] that could account for anything more than negligence. "As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Carter v. Lassiter, 2019 WL 6048043, at *4 (W.D.N.C. Nov. 14, 2019). Sharpe did not submit any affidavits in response to defendants' motion. However, in the Fourth Circuit, a pro se plaintiff's verified complaint is treated as an affidavit for summary judgment purposes when the factual allegations contained therein are based on the plaintiff's personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, because Sharpe's second amended complaint is verified, the court considers any factual allegations based on Sharpe's personal knowledge. Even in doing so, Sharpe has failed to show that any defendant acted in a manner more than negligence. To survive defendants' summary judgment motion, Sharpe must point to some evidence to show that at least one of the defendants intentionally lost his legal paperwork. As to Bush and Young, Sharpe has failed to point to any action by Bush or Young that shows intentional mishandling of his legal paperwork. At most, in the light most favorable to Sharpe, Young failed to check and see if Sharpe received his possessions after they had

---

[4] The court notes that Sharpe has continued to state that he has not received certain items that were mentioned in the decision on Sharpe's first Step 1 grievance. However, as discussed above, Sharpe's only remaining claim is his access-to-courts claim, which focuses on the loss of his legal paperwork. As such, the loss of and failure to replace the rest of Sharpe's possession are outside of the scope of this lawsuit.

presumably already been lost. Similarly, Sharpe only mentions Bush's involvement after Sharpe's possession had been lost.

With regard to Graber and Fuller, Sharpe states in his second amended complaint that Graber and Fuller lost or stole his property. ECF No. 30 at 6. Again, the action of losing Sharpe's property, without any evidence to show that it was intentional, is at most negligence and not actionable. With regard to stealing Sharpe's property, that certainly suggests intent on the part of Graber and Fuller. However, Sharpe does not provide enough detail or information for the court to determine that he has personal knowledge that Graber and Fuller stole his possession, meaning that the court cannot treat that information as a factual dispute for purposes of summary judgment. Indeed, the fact that Sharpe states that Graber and Fuller lost <u>or</u> stole his property suggests that he is not sure which is true—that Graber and Fuller either lost the property or that they stole it. Without indication of Sharpe's personal knowledge on this issue, the court cannot credit his allegation as a factual assertion in an affidavit. Because there is no evidence of intentional action by any of the defendants, the court finds that summary judgment is warranted in favor of defendants.

**B. Arguable or Nonfrivolous Claim**

The R&R also recommends summary judgment in favor of defendants because Sharpe failed to show that his underlying claim was arguable or nonfrivolous. To show injury in an access-to-court claim, "the plaintiff must show that he lost or will lose the opportunity to pursue a 'nonfrivolous' and 'arguable' claim." <u>Pronin</u>, 628 F. App'x at 162. "To prevail on a claim he has been denied meaningful access to the courts, Plaintiff must allege more than a missed deadline or opportunity to file an action in court." <u>Hurt</u>

v. Fann, 2015 WL 1210541, at *5 (D. Md. Mar. 16, 2015).  The Supreme Court has emphasized "the need for care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."  Christopher, 536 U.S. at 416.

Sharpe argues both in response to defendant's motion for summary judgment and in his objections that if his legal paperwork had not been lost, he would have been able to file his PCR application on time and his sentence could have been reduced or he could have been freed.  ECF No. 93 at 2; ECF No. 99 at 1.  Sharpe's PCR claims include an ineffective assistance of counsel claim and a due process claim.  As for the ineffective assistance of counsel, Sharpe alleged that his lawyer was ineffective for failing to show him his "rule's/motion of discovery" before trial, for failing to call certain witnesses that Sharped wanted to call, and for letting Sharpe's rights "be violated by due process."  ECF No. 86-5 at 3.  The two bases for Sharpe's due process claim are that Sharpe was not indicted within 90 days of being served with his arrest warrants and that Sharpe's indictments were not properly written, particularly because they used "and/or" when referring to the various defendants' alleged criminal behavior.

The problem with Sharpe's argument is two-fold.  First, Sharpe provides no argument as to why his PCR claims were arguable or nonfrivolous.  Indeed, Sharpe fails to show that if his PCR application was timely filed, the application would have been arguable or nonfrivolous.  Second, the court is unconvinced that Sharpe was actually prevented from timely filing his PCR application because his legal paperwork was lost, meaning that he was not denied access to the courts.  Sharpe's direct appeal ended on October 7, 2015, so his PCR application was due by October 7, 2016.  Sharpe's legal

paperwork was lost on August 9, 2016.  Sharpe eventually filed his PCR application without his legal paperwork on February 10, 2017.  The court tends to agree with Sharpe that he should not be faulted for failing to file his PCR application from October 7, 2015 to the date on which he lost his paperwork.  Sharpe had the right to file his PCR application at any point in between October 7, 2015 and October 7, 2016.  He could not predict that his legal paperwork would be lost.  However, as the R&R notes, Sharpe could have filed his PCR application between August 9, 2016, when his paperwork was lost, and October 7, 2016, when his PCR application was due.  Sharpe provides no reason as to why he did not file his PCR application during this time.  Sharpe does not argue that he could not file his PCR application without his lost paperwork, nor does he argue that his lost paperwork was required to properly complete his PCR application.  The fact that Sharpe did subsequently file his PCR application without recovering his legal paperwork indicates that he could have filed his application without his paperwork between August 9, 2016 and October 7, 2016.  However, Sharpe failed to do so.

The court reviewed for clear error the remaining portions of the R&R to which Sharpe did not object.  After a thorough review of the record, the court finds no clear error and grants defendants' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 10, 2019
Charleston, South Carolina**